Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

Sacramento Division

**FILED**

DEC 2 0 2021

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK



Sheila Halousek,
               Plaintiff,

vs.

Sacramento County Sheriff's Office and
the State of California,
               Defendants.

Case No.

2:21-CV 2351 TLN DB PS



## COMPLAINT AND REQUEST FOR INJUNCTION

### I. The Parties to This Complaint

#### A. The Plaintiff(s)

Sheila Halousek

PO Box 8025

Marysville, CA 95901

916-764-1773 (Text only)

shalousek@gmail.com

Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

**B. The Defendant(s)**

Defendant No. 1

Sacramento County Sheriff's Office

Internal Affairs Bureau

4500 Orange Grove Avenue

Sacramento, CA 95841

916-874-5098

InternalAffairs@sacsheriff.com

Defendant No. 2

State of California

Department of Justice

Office of the Attorney General

1300 "I" Street

Sacramento, CA 95814-2919

Phone: (916) 445-9555

AGelectronicservice@doj.ca.gov

**II. Basis for Jurisdiction**

**A. Venue**

This case involves **a federal question** that of application of federal civil law and relief from violations thereof. Under the 11th Amendment, a person can bring a state lawsuit in federal court if the lawsuit is against a state's subdivisions, like its counties or cities and where a state breaks a federal law, the federal court can order that state's officials to comply with the law. For example, in the matter of Martin v. Voinovich (1993), wherein the Supreme Court rendered a decision ordering Ohio's governor to build housing for handicapped people. This decision was the result of the state's refusal to comply with the Americans with Disabilities Act.

Plaintiff brings this complaint and request for injunction against Sacramento County, a subdivision of the State of California for violations of Plaintiff's Federal Civil Right to Due Process

Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

required by the United States Constitution in the Fifth and Fourteenth Amendments.

The civil right to Due Process is considered so important that this right is contained in two amendments, the Fifth and Fourteenth Amendments to the United States Constitution each contain a Due Process Clause. Due process deals with the administration of justice and thus the Due Process Clause acts as a safeguard from arbitrary denial of life, liberty, or property by the government outside the sanction of law. The Supreme Court of the United States interprets the clauses as providing four protections: procedural due process (in civil and criminal proceedings), substantive due process, a prohibition against vague laws, and as the vehicle for the incorporation of the Bill of Rights.

Procedural Due Process Civil, SECTION 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

Generally, due process requires that the procedures by which laws are applied must be evenhanded, so that individuals are not subjected to the arbitrary exercise of government power.[1] Exactly what procedures are needed to satisfy due process, however, will vary depending on the circumstances and subject matter involved.[2] A basic threshold issue respecting whether due process is satisfied is whether the government conduct being examined is a part of a criminal or civil proceeding.[3] The appropriate framework for assessing procedural rules in the field of criminal law is determining whether the procedure is offensive to the concept of fundamental fairness.[4] In civil contexts, however, a balancing test is used that evaluates the government's chosen procedure with respect to the private interest affected, the risk of erroneous deprivation of that interest under the chosen procedure, and the government interest at stake.[5]

***The Requirements of Due Process.***—Although due process tolerates variances in procedure "appropriate to the nature of the case,"[6] it is nonetheless possible to identify its core goals and requirements. First, "[p]rocedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property."[7] Thus, the

Case 2:21-cv-02351-TLN-DB   Document 1   Filed 12/20/21   Page 4 of 16

Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

required elements of due process are those that "minimize substantively unfair or mistaken deprivations" by enabling persons to contest the basis upon which a state proposes to deprive them of protected interests.[8] The core of these requirements is notice and a hearing before an impartial tribunal. Due process may also require an opportunity for confrontation and cross-examination, and for discovery; that a decision be made based on the record, and that a party be allowed to be represented by counsel.

(1) Notice. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."[9] This may include an obligation, upon learning that an attempt at notice has failed, to take "reasonable follow up measures" that may be available.[10] In addition, **notice must be sufficient to enable the recipient to determine what is being proposed and what he must do to prevent the deprivation of his interest.**[11] Ordinarily, service of the notice must be reasonably structured to assure that the person to whom it is directed receives it.[12] Such notice, however, need not describe the legal procedures necessary to protect one's interest if such procedures are otherwise set out in published, generally available public sources.[13]

(2) Hearing. "[S]ome form of hearing is required before an individual is finally deprived of a property [or liberty] interest."[14] This right is a "basic aspect of the duty of government to follow a fair process of decision making when it acts to deprive a person of his possessions. The purpose of this requirement is not only to ensure abstract fair play to the individual. Its purpose, more particularly, is to protect his use and possession of property from arbitrary encroachment . . . ."[15] Thus, the notice of hearing and the opportunity to be heard "must be granted at a meaningful time and in a meaningful manner."[16]

(3) Impartial Tribunal. Just as in criminal and quasi-criminal cases,[17] an impartial decisionmaker is an essential right in civil proceedings as well.[18] "The neutrality requirement helps to guarantee that life, liberty, or property will not be taken on the basis of an erroneous or distorted conception of the facts or the law. . . . At the same time, it preserves both the appearance and reality of fairness . . . by ensuring that no person will be deprived of his interests in the absence of a

Page 4 of 16

Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

proceeding in which he may present his case with assurance that the arbiter is not predisposed to find against him."[19] Thus, a showing of bias or of strong implications of bias was deemed made where a state optometry board, made up of only private practitioners, was proceeding against other licensed optometrists for unprofessional conduct because they were employed by corporations. Since success in the board's effort would redound to the personal benefit of private practitioners, the Court thought the interest of the board members to be sufficient to disqualify them.[20]

There is, however, a "presumption of honesty and integrity in those serving as adjudicators,"[21] so that the burden is on the objecting party to show a conflict of interest or some other specific reason for disqualification of a specific officer or for disapproval of the system. Thus, combining functions within an agency, such as by allowing members of a State Medical Examining Board to both investigate and adjudicate a physician's suspension, may raise substantial concerns, but does not by itself establish a violation of due process.[22] The Court has also held that the official or personal stake that school board members had in a decision to fire teachers who had engaged in a strike against the school system in violation of state law was not such so as to disqualify them.[23] Sometimes, to ensure an impartial tribunal, the Due Process Clause requires a judge to recuse himself from a case. In *Caperton v. A. T. Massey Coal Co. , Inc.*, the Court noted that "most matters relating to judicial disqualification [do] not rise to a constitutional level," and that "matters of kinship, personal bias, state policy, [and] remoteness of interest, would seem generally to be matters merely of legislative discretion."[24] The Court added, however, that "[t]he early and leading case on the subject" had "concluded that the Due Process Clause incorporated the common-law rule that a judge must recuse himself when he has 'a direct, personal, substantial, pecuniary interest' in a case."[25] In addition, although "[p]ersonal bias or prejudice 'alone would not be sufficient basis for imposing a constitutional requirement under the Due Process Clause,'" there "are circumstances 'in which experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable.'"[26] These circumstances include "where a judge had a financial interest in the outcome of a case" or "a conflict arising from his participation in an earlier proceeding."[27] In such cases, "[t]he inquiry is an objective one. The Court asks not whether the judge is actually, subjectively biased, but whether the average judge in his position is 'likely' to be neutral,

Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

or whether there is an unconstitutional 'potential for bias.'"[28] In *Caperton*, a company appealed a jury verdict of $50 million, and its chairman spent $3 million to elect a justice to the Supreme Court of Appeals of West Virginia at a time when "[i]t was reasonably foreseeable . . . that the pending case would be before the newly elected justice."[29] This $3 million was more than the total amount spent by all other supporters of the justice and three times the amount spent by the justice's own committee. The justice was elected, declined to recuse himself, and joined a 3-to-2 decision overturning the jury verdict. The Supreme Court, in a 5-to-4 opinion written by Justice Kennedy, "conclude[d] that there is a serious risk of actual bias—based on objective and reasonable perceptions—when a person with a personal stake in a particular case had a significant and disproportionate influence in placing the judge on the case by raising funds or directing the judge's election campaign when the case was pending or imminent."[30]

Subsequently, in *Williams v. Pennsylvania*, the Court found that the right of due process was violated when a judge on the Pennsylvania Supreme Court—who participated in case denying post-conviction relief to a prisoner convicted of first-degree murder and sentenced to death—had, in his former role as a district attorney, given approval to seek the death penalty in the prisoner's case.[31] Relying on *Caperton*, which the Court viewed as having set forth an "objective standard" that requires recusal when the likelihood of bias on the part of the judge is "too high to be constitutionally tolerable,"[32] the *Williams* Court specifically held that there is an impermissible risk of actual bias when a judge had previously had a "significant, personal involvement as a prosecutor in a critical decision regarding the defendant's case."[33] The Court based its holding, in part, on earlier cases which had found impermissible bias occurs when the same person serves as both "accuser" and "adjudicator" in a case, which the Court viewed as having happened in *Williams*.[34] It also reasoned that authorizing another person to seek the death penalty represents "significant personal involvement" in a case,[35] and took the view that the involvement of multiple actors in a case over many years "only heightens"—rather than mitigates—the "need for objective rules preventing the operation of bias that otherwise might be obscured."[36] As a remedy, the case was remanded for reevaluation by the reconstituted Pennsylvania Supreme Court, notwithstanding the fact that the judge in question did not cast the deciding vote, as the *Williams* Court viewed the judge's

Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

participation in the multi-member panel's deliberations as sufficient to taint the public legitimacy of the underlying proceedings and constitute reversible error.[37]

(4) Confrontation and Cross-Examination. "In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses."[38] Where the "evidence consists of the testimony of individuals whose memory might be faulty or who, in fact, might be perjurers or persons motivated by malice, vindictiveness, intolerance, prejudice, or jealously," the individual's right to show that it is untrue depends on the rights of confrontation and cross-examination. "This Court has been zealous to protect these rights from erosion. It has spoken out not only in criminal cases, . . . but also in all types of cases where administrative . . . actions were under scrutiny."[39]

(5) Discovery. The Court has never directly confronted this issue, but in one case it did observe in *dictum* that "where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue."[40] Some federal agencies have adopted discovery rules modeled on the Federal Rules of Civil Procedure, and the Administrative Conference has recommended that all do so.[41] There appear to be no cases, however, holding they must, and there is some authority that they cannot absent congressional authorization.[42]

(6) Decision on the Record. Although this issue arises principally in the administrative law area,[43] it applies generally. "[T]he decisionmaker's conclusion . . . must rest solely on the legal rules and evidence adduced at the hearing. To demonstrate compliance with this elementary requirement, the decisionmaker should state the reasons for his determination and indicate the evidence he relied on, though his statement need not amount to a full opinion or even formal findings of fact and conclusions of law."[44]

(7) Counsel. In *Goldberg v. Kelly*, the Court held that a government agency must permit a welfare recipient who has been denied benefits to be represented by and assisted by counsel.[45] In the years since, the Court has struggled with whether civil litigants in court and persons before agencies who could not afford retained counsel should have counsel appointed and paid for, and the matter

Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

seems far from settled. The Court has established a presumption that an indigent does not have the right to appointed counsel unless his "physical liberty" is threatened.[46] Moreover, that an indigent may have a right to appointed counsel in some civil proceedings where incarceration is threatened does not mean that counsel must be made available in all such cases. Rather, the Court focuses on the circumstances in individual cases, and may hold that provision of counsel is not required if the state provides appropriate alternative safeguards.[47]

*The Interests Protected: "Life, Liberty and Property".*— The language of the Fourteenth Amendment requires the provision of due process when an interest in one's "life, liberty or property" is threatened.[48] **Plaintiff's vehicle constitutes her property under the law and her right to due process prior to any government confiscating thereof is undeniable**.

*Notice: Service of Process.*—Before any government may legitimately exercise control over persons and property, the state's jurisdiction must be perfected by an appropriate service of process that is effective to notify all parties of proceedings that may affect their rights.[49] Personal service guarantees actual notice of the pendency of a legal action, and has traditionally been deemed necessary in actions styled *in personam*.[50] But "certain less rigorous notice procedures have enjoyed substantial acceptance throughout our legal history; in light of this history and the practical obstacles to providing personal service in every instance," the Court in some situations has allowed the use of procedures that "do not carry with them the same certainty of actual notice that inheres in personal service."[51] But, whether the action be *in rem* or *in personam*, **there is a constitutional minimum; due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."[52]**

## III. Statement of Claim

Late in the morning of November 29, 2021, Deputy Sheriff Oliver # 831 issued to Ms. Halousek a 72-Hour Notice, Vehicle Check/Parking Warning, for Ms. Halousek's vehicle, License Number 6L49275, at 1532 Heskett Way. Even though Ms. Halousek was occupying her vehicle, Officer John Doe and Officer Oliver contended that her vehicle was abandoned and unless moved

Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

would be towed. Officer John Doe initially specified that Ms. Halousek had until the end of the day to comply. Such a unilateral demand with an utter lack of adequate notice, actually shocked the plaintiff and Ms. Halousek argued that her vehicle could not be towed unless she was properly noticed. Only after Plaintiff's objection did Officer Oliver then issue a 72-Hour Notice, see attached Exhibit 1, which indicated that Ms. Halousek in fact actually had 72 hours to move her vehicle or it would be towed and confiscated.

72 hours is still a miniscule amount of time, which does not meet the elementary and fundamental requirement of due process in any proceeding where notice should be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.

Pursuant to Federal Civil Rights, Plaintiff has the right to be free from any violence, or intimidation by threat of violence, committed against persons or property. Defendants' expressions and unlawful notice to confiscate Plaintiff's property constitutes a threat against Plaintiff's property and violates her civil rights. Plaintiff is free to seek redress and the courts should so provide in accordance with the law.

Plaintiff is not only concerned for her mistreatment, but it seems apparent, both by the conduct of Sheriff Deputies, but also their form, see Exhibit 1, that violating the legally required due process is a matter of Sacramento County Sheriff's public policy. Accordingly, Plaintiff feels that it is her civil duty as an American to speak up and contest this heinous conduct.

## IV. Irreparable Injury

Plaintiff's vehicle is a property interest under which Plaintiff, as an individual, is able to exercise her authority and power over this property to the exclusion of all others. This is a basic property right that entitles the Plaintiff to (1) the right to continue peaceful possession against everyone except someone having a superior right; (2) the right to recover a chattel that has been wrongfully taken; and (3) the right to recover damages against wrong doers.

Plaintiff's use of her vehicle is valuable to her and the loss of such use would cause her an immeasurable hardship. Presently, Plaintiff lives in constant fear that her vehicle could be confiscated

Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

at any moment and her pain and suffering is beyond algebra to quantify or words to describe.

Should Plaintiff's vehicle be confiscated by the Sheriff's Department, as noticed, Defendants' would be acting contrary to explicitly required due process and engaging in such conduct far removed from acceptable social standards and Plaintiff's injury and damages would be even greater. Wherefore, Plaintiff would then be seeking further redress with the Court.

## V. Relief

Therefore, Plaintiff prays for an injunction prohibiting Defendants from unlawfully confiscating Plaintiff's vehicle, her valuable personal property without proper due process, as required by law pursuant to the constitution of the United States.

Plaintiff further prays for such other general or specific relief as may be proper in the premises.

## VI. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

DATED: December 10, 2021                    *Sheila Halousek*

_____

SHEILA HALOUSEK

Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

## Notes

[1] Thus, where a litigant had the benefit of a full and fair trial in the state courts, and his rights are measured, not by laws made to affect him individually, but by general provisions of law applicable to all those in like condition, he is not deprived of property without due process of law, even if he can be regarded as deprived of his property by an adverse result. Marchant v. Pennsylvania R.R., 153 U.S. 380, 386 (1894).

[2] Hagar v. Reclamation Dist., 111 U.S. 701, 708 (1884). "Due process of law is [process which], following the forms of law, is appropriate to the case and just to the parties affected. It must be pursued in the ordinary mode prescribed by law; it must be adapted to the end to be attained; and whenever necessary to the protection of the parties, it must give them an opportunity to be heard respecting the justice of the judgment sought. Any legal proceeding enforced by public authority, whether sanctioned by age or custom or newly devised in the discretion of the legislative power, which regards and preserves these principles of liberty and justice, must be held to be due process of law." Id. at 708; *Accord*, Hurtado v. California, 110 U.S. 516, 537 (1884).

[3] *See* Medina v. California 505 U.S. 437, 443 (1992).

[4] *Id.*

[5] *See* Mathews v. Eldridge, 424 U.S. 319, 335 (1976). In *Nelson v. Colorado*, the Supreme Court held that the *Mathews* test controls when evaluating state procedures governing the continuing deprivation of property *after* a criminal conviction has been reversed or vacated, with no prospect of reprosecution. *See* 581 U.S. ___, No. 15–1256, slip op. at 6 (2017).

[6] Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950).

[7] Carey v. Piphus, 435 U.S. 247, 259 (1978). "[P]rocedural due process rules are shaped by the risk of error inherent in the truth-finding process as applied to the generality of cases." Mathews v. Eldridge, 424 U.S. 319, 344 (1976).

[8] Fuentes v. Shevin, 407 U.S. 67, 81 (1972). At times, the Court has also stressed the dignitary importance of procedural rights, the worth of being able to defend one's interests even if one cannot change the result. Carey v. Piphus, 435 U.S. 247, 266–67 (1978); Marshall v. Jerrico, Inc., 446 U.S. 238, 242 (1980); Nelson v. Adams, 529 U.S. 460 (2000) (amendment of judgement to impose attorney fees and costs to sole shareholder of liable corporate structure invalid without notice or opportunity to dispute).

[9] Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). *See also* Richards v. Jefferson County, 517 U.S. 793 (1996) (res judicata may not apply where taxpayer who challenged a county's occupation tax was not informed of prior case and where taxpayer interests were not adequately protected).

[10] Jones v. Flowers, 547 U.S. 220, 235 (2006) (state's certified letter, intended to notify a property owner that his property would be sold unless he satisfied a tax delinquency, was returned by the post office marked "unclaimed"; the state should have taken additional reasonable steps to notify the property owner, as it would have been practicable for it to have done so).

Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

[11] Goldberg v. Kelly, 397 U.S. 254, 267–68 (1970).

[12] Armstrong v. Manzo, 380 U.S. 545, 550 (1965); Robinson v. Hanrahan, 409 U.S. 38 (1974); Greene v. Lindsey, 456 U.S. 444 (1982).

[13] City of West Covina v. Perkins, 525 U.S. 234 (1999).

[14] Mathews v. Eldridge, 424 U.S. 319, 333 (1976). "Parties whose rights are to be affected are entitled to be heard." Baldwin v. Hale, 68 U.S. (1 Wall.) 223, 233 (1863).

[15] Fuentes v. Shevin, 407 U.S. 67, 80–81 (1972). *See* Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 170–71 (1951) (Justice Frankfurter concurring).

[16] Armstrong v. Manzo, 380 U.S. 545, 552 (1965).

[17] Tumey v. Ohio, 273 U.S. 510 (1927)); *In re* Murchison, 349 U.S. 133 (1955).

[18] Goldberg v. Kelly, 397 U.S. 254, 271 (1970).

[19] Marshall v. Jerrico, 446 U.S. 238, 242 (1980); Schweiker v. McClure, 456 U.S. 188, 195 (1982).

[20] Gibson v. Berryhill, 411 U.S. 564 (1973). Or, the conduct of deportation hearings by a person who, while he had not investigated the case heard, was also an investigator who must judge the results of others' investigations just as one of them would some day judge his, raised a substantial problem which was resolved through statutory construction). Wong Yang Sung v. McGrath, 339 U.S. 33 (1950).

[21] Schweiker v. McClure, 456 U.S. 188, 195 (1982); Withrow v. Larkin, 421 U.S. 35, 47 (1975); United States v. Morgan, 313 U.S. 409, 421 (1941).

[22] Withrow v. Larkin, 421 U.S. 35 (1975). Where an administrative officer is acting in a prosecutorial, rather than judicial or quasi-judicial role, an even lesser standard of impartiality applies. Marshall v. Jerrico, 446 U.S. 238, 248–50 (1980) (regional administrator assessing fines for child labor violations, with penalties going into fund to reimburse cost of system of enforcing child labor laws). But "traditions of prosecutorial discretion do not immunize from judicial scrutiny cases in which enforcement decisions of an administrator were motivated by improper factors or were otherwise contrary to law." Id. at 249.

[23] Hortonville Joint School Dist. v. Hortonville Educ. Ass'n, 426 U.S. 482 (1976). *Compare* Arnett v. Kennedy, 416 U.S. 134, 170 n.5 (1974) (Justice Powell), *with* id. at 196–99 (Justice White), and 216 (Justice Marshall).

[24] 556 U.S. ___, No. 08–22, slip op. at 6 (2009) (citations omitted).

[25] 556 U.S. ___, No. 08–22, slip op. at 6, quoting Tumey v. Ohio, 273 U.S. 510, 523 (1927).

[26] 556 U.S. ___, No. 08–22, slip op. at 6 (citations omitted).

[27] 556 U.S. ___, No. 08–22, slip op. at 7, 9.

[28] 556 U.S. ___, No. 08–22, slip op. at 11 (citations omitted).

Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

[29] 556 U.S. ___, No. 08–22, slip op. at 15.

[30] 556 U.S. ___, No. 08–22, slip op. at 14. Chief Justice Roberts, joined by Justices Scalia, Thomas, and Alito, dissented, asserting that "a 'probability of bias' cannot be defined in any limited way," "provides no guidance to judges and litigants about when recusal will be constitutionally required," and "will inevitably lead to an increase in allegations that judges are biased, however groundless those charges may be." Slip. op. at 1 (Roberts, C.J., dissenting). The majority countered that "[t]he facts now before us are extreme in any measure." Slip op. at 17.

[31] 579 U.S. ___, No. 15–5040, slip op. at 1 (2016).

[32] *Id.* (internal quotations omitted).

[33] *Id.* at 5–6.

[34] *Id.* at 6 (citing *In re Murchison*, 349 U.S. 133, 136–37 (1955)). The Court also noted that "[n]o attorney is more integral to the accusatory process than a prosecutor who participates in a major adversary decision." *Id.* at 7.

[35] *Id.* at 9. *See also id.* at 10 (noting that the judge in this case had highlighted the number of capital cases in which he participated when campaigning for judicial office).

[36] *Id.* at 8.

[37] *Id.* at 12–13. Likewise, the Court rejected the argument that remanding the case would not cure the underlying due process violation because the disqualified judge's views might still influence his former colleagues, as an "inability to guarantee complete relief for a constitutional violation . . . does not justify withholding a remedy altogether." *Id.* at 14.

[38] Goldberg v. Kelly, 397 U.S. 254, 269 (1970). *See also* ICC v. Louisville & Nashville R.R., 227 U.S. 88, 93–94 (1913). *Cf.* § 7(c) of the Administrative Procedure Act, 5 U.S.C. § 556(d).

[39] Greene v. McElroy, 360 U.S. 474, 496–97 (1959). *But see* Richardson v. Perales, 402 U.S. 389 (1971) (where authors of documentary evidence are known to petitioner and he did not subpoena them, he may not complain that agency relied on that evidence). *Cf.* Mathews v. Eldridge, 424 U.S. 319, 343–45 (1976).

[40] Greene v. McElroy, 360 U.S. 474, 496 (1959), *quoted with approval in* Goldberg v. Kelly, 397 U.S. 254, 270 (1970).

[41] RECOMMENDATIONS AND REPORTS OF THE ADMINISTRATIVE CONFERENCE OF THE UNITED STATES 571 (1968–1970).

[42] FMC v. Anglo-Canadian Shipping Co., 335 F.2d 255 (9th Cir. 1964).

[43] The exclusiveness of the record is fundamental in administrative law. *See* § 7(d) of the Administrative Procedure Act, 5 U.S.C. § 556(e). However, one must show not only that the agency used *ex parte* evidence but that he was prejudiced thereby. Market Street R.R. v. Railroad Comm'n, 324 U.S. 548 (1945) (agency decision supported by evidence in record, its decision sustained, disregarding *ex parte* evidence).

[44] Goldberg v. Kelly, 397 U.S. 254, 271 (1970) (citations omitted).

[45] 397 U.S. 254, 270–71 (1970).

[46] Lassiter v. Department of Social Services, 452 U.S. 18 (1981). The Court purported to draw this rule from Gagnon v. Scarpelli, 411 U.S. 778 (1973) (no *per se* right to counsel in probation revocation proceedings). To introduce this presumption into the balancing, however, appears to disregard the fact that the first factor of Mathews v. Eldridge, 424 U.S. 319 (1976), upon which the Court (and dissent) relied, relates to the importance of the interest to the person claiming the right. Thus, at least in this context, the value of the first *Eldridge* factor is diminished. The Court noted, however, that the Mathews v. Eldridge standards were drafted in the context of the generality of cases and were not intended for case-by-case application. *Cf.* 424 U.S. at 344 (1976).

[47] Turner v. Rogers, 564 U.S. ___, No. 10–10, slip op. (2011). The *Turner* Court denied an indigent defendant appointed counsel in a civil contempt proceeding to enforce a child support order, even though the defendant faced incarceration unless he showed an inability to pay the arrearages. The party opposing the defendant in the case was not the state, but rather the unrepresented custodial parent, nor was the case unusually complex. A five-Justice majority, though denying a right to counsel, nevertheless reversed the contempt order because it found that the procedures followed remained inadequate.

[48] Morrissey v. Brewer, 408 U.S. 471, 481 (1982). "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. When protected interests are implicated, the right to some kind of prior hearing is paramount. But the range of interests protected by procedural due process is not infinite." Board of Regents v. Roth, 408 U.S. 564, 569–71 (1972). Developments under the Fifth Amendment's Due Process Clause have been interchangeable. *Cf.* Arnett v. Kennedy, 416 U.S. 134 (1974).

[49] "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). "There . . . must be a basis for the defendant's amenability to service of summons. Absent consent, this means there must be authorization for service of summons on the defendant." Omni Capital Int'l v. Rudolph Wolff & Co., 484 U.S. 97 (1987).

[50] McDonald v. Mabee, 243 U.S. 90, 92 (1971).

[51] Greene v. Lindsey, 456 U.S. 444, 449 (1982). *See* Dusenbery v. United States, 534 U.S. 161 (2001) (upholding a notice of forfeiture that was delivered by certified mail to the mailroom of a prison where the individual to be served was incarcerated, even though the individual himself did not sign for the letter).

[52] Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). Thus, in Jones v. Flowers, 547 U.S. 220 (2006), the Court held that, after a state's certified letter, intended to notify a property owner that his property would be sold unless he satisfied a tax delinquency, was returned by the post office marked "unclaimed," the state should have taken additional reasonable steps to notify

Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

the property owner, as it would have been practicable for it to have done so. And, in *Greene v. Lindsey*, 456 U.S. 444 (1982), the Court held that, in light of substantial evidence that notices posted on the doors of apartments in a housing project in an eviction proceeding were often torn down by children and others before tenants ever saw them, service by posting did not satisfy due process. Without requiring service by mail, the Court observed that the mails "provide an 'efficient and inexpensive means of communication' upon which prudent men will ordinarily rely in the conduct of important affairs." Id. at 455 (citations omitted). *See also* Mennonite Bd. of Missions v. Adams, 462 U.S. 791 (1983) (personal service or notice by mail is required for mortgagee of real property subject to tax sale, Tulsa Professional Collection Servs. v. Pope, 485 U.S. 478 (1988) (notice by mail or other appropriate means to reasonably ascertainable creditors of probated estate).

Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

## 72-HOUR NOTICE
## VEHICLE CHECK/PARKING WARNING
## Sacramento County Sheriff's Department

An Officer of the Sacramento Sheriff's Department has observed this vehicle parked on a Sacramento County Street/Right-of-way

1532 HESKETT

| LOCATION | | | |
| --- | --- | --- | --- |
| 11/29/21  1431 | LL49275 | 1FTRNØ7L4IK | FIB412 |
| DATE AND TIME | VEH LICENSE NO/STATE | VIN OR FRAME NUMBER | |
| OLIVER   831 | | | |
| OFFICER AND I D NUMBER | | PHONE NUMBER | |

**NOTICE:** Your attention is directed to the statement(s) following the box(es) checked:

### CALIFORNIA VEHICLE CODE SECTIONS CITED

_____ **22669(a)** Vehicle code provides for removal of a vehicle when an officer has reasonable grounds to believe it has been abandoned.

_____ **22669(d)** Vehicle code provides for immediate removal of a vehicle when it is missing parts necessary to operate safely on a public roadway.

☒ **22651(o)** Vehicle code provides for removal of vehicle where registration has been expired for more than six (6) months.

_____ **22651(b)** Vehicle code provides for removal of illegally parked vehicles in violation of Sacramento County Ordinance 10.24.150.

_____ **22651(k)** Vehicle code provides for removal of a vehicle from a highway after seventy-two (72) hours of continuous parking in violation of Sacramento County Ordinance 10.24.070(b)

_____ **22523** Vehicle code prohibits abandonment of a vehicle. Vehicle Code Section 22524 makes the last owner of record liable for the costs of removal and disposition.

_____ Specify Other/Comments: _____

### THIS IS NOT A TRAFFIC CITATION
**CONTINUED VIOLATION MAY RESULT IN THE TOWING OF THE VEHICLE** Unless the vehicle is immediately put into regular use or removed from the street, it will be towed and stored at your expense.

SSD-003L rev 4/13

**Exhibit 1**

Page **16** of **16**